Moncure, P.,
after stating the case, proceeded:
It is a rule of the common law, that upon a joint contract the action must be against all the joint contractors, and, as a general rule, the judgment must be against all or none of them. But that is not a universal rule. Where a defendant in such an action pleads matter which goes to his personal discharge, such as bankruptcy, infancy, or any matter that docs not go to the action of the writ; or pleads or gives in evidence a matter which is a bar to the action as against him only, and of which the others could not take advantage, judgment may be given for such defendant and against the rest. 1 Rob. Pr., old edition, pp. 400-402, and the cases there cited, viz: Cole v. Pennell, &c., 2 Rand. 174; Walmsley v. Lindenberger & Co., Id. 478; Tooker v. Bennett, &c., 3 Caines R. 4; Hartness, &c., v. Thompson, &c., 5 Johns. R. 160; Morton v. Croghan, 20 Id. 106.
*282 Such was the common law when the act was passed authorizing an action of debt to be brought against the drawer and endorsers of a foreign bill of exchange j ointly, or against either of them separately. 1 Rev. Co. 1819, p. 485, § 2. This act was extended from time to time tu all bills or notes negotiable at banks or their offices of discount and deposit, or the place of business of a savings institution or bank, &c., until it assumes the form in which it now stands in our Code of 1860, ch. 144, § 11, p. 629. The remedy given by this act, as Judge Green well remarked in Taylor v. Beck, 3 Rand. 316, 328, was perfectly novel in all respects, since it authorized a joint action upon several contracts ; and such an action of debt even against one only, as was not known to the common law. 1 Rob. Pr. old ed. 48. Though the contracts of the drawer and endorsers are several, yet where the action is brought against them jointly, the parties are subjected to all the consequences flowing from the settled rules of the common law governing joint actions. One of those consequences is, that the judgment also, must be joint; and that a failure as to one of the defendants, is a failure as to all of therm This rule is as applicable to a joint action upon a joint and several bond, as to any other action ; and of course it equally applies to a joint action against the drawer and endorsers of a foreign hill of exchange, &c. Id. Taylor, &c. v. Beck, 3 Rand. 316. There are some cases, as before stated, in which a judgment may be given for one, and against another defendant in a joint action, as where a verdict is found for one defendant upon a plea of infancy, or other matter which goes to his personal discharge, without affecting the liability of the other. But cases of this kind constitute exceptions to the general rule. Id. Opinions in S. C. by Green, J. p. 334, and Cabell, J. p. 360. 1 Rob. Pr. sup. 49.
Such was the state of the common law as modified by the act aforesaid when the provision contained in the *283 Code, chapter 177, § 19, p. 733, which will be presently set out and commented on, was enacted. If, in that state of the law, Moffett had brought this joint action against the maker and endorsers of the negotiable note aforesaid, there can be no doubt, I presume, on the authorities before referred to, and principles before stated, he would have failed in his action, and as judgment was properly rendered against him in favor of some of the defendants, it would have been necessary to render judgment against him in favor of the defendant Biekle also.
But, even in that state of the law, if Moffett had brought a several action against Biekle upon bis endorsement, there can be no doubt, I presume, but that the plaintiff.would have been entitled to judgment against, the defendant, notwithstanding the usury in the transaction between the defendant and the other endorsers and maker of the note. The contract of endorsement on which the action in that case would have been brought, is entirely several and independent of the contracts of the maker and of the prior endorsers, and is wholly unaffected by the usury which taints those contracts. That they are usurious and void, is a good reason why the plaintiff would have been entitled to recover in such an action, instead of being a reason why he should not recover. The contract implied by Bickle’s endorsement • was that the note should be duly paid at maturity; and his liability is none the less when the. note has not only not been duly paid, but is infected with usury between him and the prior endorsers and maker, so that an action cannot be maintained against such prior endorsers and maker. Indeed, the endorser impliedly undertakes by the contract of endorsement, if the endorsee be a bona fide endorsee for value and 'without notice, such as Moffett is, that the note is a valid and subsisting note, free from usury or any other stain that would avoid it. The learned counsel for Biekle seems to admit that he is liable to Moffett, in some other form of action, for *284 the money paid by the latter for the note, but not that he is liable on his endorsement. I can see no reason ^or distinction, and am of opinion that Moffett would have been entitled to recover, if he had brought kis action against Bickle alone, on his several contract of endorsement.
If there were any doubt upon this question, I think it would be removed by the case referred to by the learned counsel of the plaintiff in error, of Edwards v. Dick, decided by the court of King’s Bench in 1822, and reported in 4 Barn. & Ald. 212; 6 Eng. C. L. R. 405. Abbott, C. J., and Bayley, Holroyd and Best, JJ., composed the court, and were unanimous. Such a decision of such a court, is entitled to the highest respect. But the reasons assigned by the learned judges command more of our respect in weighing its authority, than does their high judicial character. The decision was, that in an action against the drawer of a bill, it is no defence that the bill was accepted for a gaming debt, if it be endorsed over by the drawer for a valuable consideration to a third person, by whom the action is brought. The judges delivered their opinions seriatim. All of what they say is as pertinent to this case as to that. That, it is true, was a case in which the question arose as to the statute of gaming; while here, the question arises in regard to the statute of usury. But the statute of gaming is very broad and sweeping in its terms, just as much so as the statute of usury. And indeed Abbott, O. J., in his opinion, places the case upon the same ground with that of usury, and says * ‘ there is no case upon the statute of usury, where a drawer, having parted with a bill for a good consideration, can afterwards set up as a defence, an antecedent usurious contract between himself and the acceptor. Eor, if so, a court of justice would enable him to commit a gross fraud upon an innocent party.” There are other passages in his opinion, and those of his associates, *285 which are very strong and appropriate, but I will not quote them, as the case itself is very accessible to the profession.
The action in this case, however, is not several, against the endorser Bickle, upon his endorsement only, but joint, against the maker and all the endorsers ; and the question is, can a several judgment be rendered against Bickle in such an action, when judgment is rendered in favor of the other defendants on account of usury in the transaction between the maker and Bickle?
I think we would have had to decide that question in the negative, on the authority of the case of Taylor, &c. v. Beck, 3 Rand. 316, if the law now were as it was when that case was decided.
But another law is now in force, and was when this action was brought, which seems to have a material bearing on the enquiry now in hand; and that is, the provision before referred to in the Code, ch. 177, § 19, p. 733; which is in these words : “ In an action founded on contract, against two or more defendants, although the plaintiff may be barred as to one or more of them, yet he may have judgment against any other or others of the defendants against whom he would have been entitled to recover if he had sued them only.55 Bow, this section seems to suit this case precisely, and to have been made for the very purpose of covering such cases. The case is within the literal terms of the section. It is a case in which the action is “ founded on contract against two or more defendants ; and, “ although the plaintiff may be barred as to one or more of them, as he is in this case by the defence of usury applicable only to them, yet he may have judgment against any other or others of the defendants against whom he would, have been entitled to recover if he had sued them only; and we have seen he would have been entitled to recover against the defendant Bickle if an action had been brought against him only, on his endorsement. The- *286 case is also within the plain spirit of this section, which was to avoid unnecessary delay and expense produced by a mere technicality: and that has long been the general course of our legislation on such subjects. It was admitted in Taylor, &c. v. Beck, that, though a joint action is given in the case, and the contract must be considered joint for the purpose of the remedy, yet the action is iu fact upon several contracts, and the statute only gives a new remedy, without affecting or varying the substantial rights and responsibilities of the parties. 3 Rand. 328; 1 Rob. Pr. 48. Row, the section we are considering gets rid of the difficulty, which, in the opinion of the court in that case, arose from the nature of the remedy by a joint action. "Why should the plaintiff be turned around to a new action, when one is already pending, in which perfect justice may be done without injuring anybody ? The legislature thought he should not be so turned around, and therefore enacted the section aforesaid to provide for this and other like cases. Formerly, the practice was, wheu one of several joint contractors was discharged on the ground of infancy, to require the plaintiff to discontinue his action, and bring a new one against the adult defendants. But the good sense of courts, without the aid of legislation, has long since changed the rule, and now the practice is, to proceed to judgment in the same action in which the infant is discharged, against the adult defendants. 2 Rand. 179, 478; 5 John. R. 160; 20 Id. 106; 1 Rob. Pr. 400. Here the statute comes in to our aid; in part no doubt, if not chiefly, in consequence of the decision in Taylor, &c. v. Beck.
The statute is, in itself, I think, as plain as it well could be. But, if we look to one or more of the sources from which it seems to have been derived, its meaning may perhaps appear more plainly. One of those sources Beems to be, an act passed March 12, 1838, Sess. acts 1838, p. 74, ch. 96 ; the second section of which declares *287 “ that in all actions on contracts against two or more defendants, if one or more of them shall be acquitted or discharged by the verdict of a jury or otherwise, the plaintiff' shall nevertheless be entitled to proceed to judgment against the other defendant or defendants in like manner as if the action had been instituted against him or them, without joining the party or parties who may have been acquitted or discharged; but the last mentioned party or parties shall be entitled to recover his or their costs of the plaintiff. ” Another of those sources seems to be an act passed April 3, 1838, entitled, “An act amending the statute of limitations; ” Id. p. 73, ch. 95 ; the 1st section of which provides, “ that in actions to be commenced against two or more such joint contractors, &c., if it shall appear, at the trial or otherwise, that the plaintiff:', though barred by the before recited act or this act, as to one or more of such joint contractors, &e., shall nevertheless be entitled to recover against any other or others of the defendants, by virtue of a new acknowledgment or promise, or otherwise, judgment may be given, and costs allowed for the plaintiff' as to such defendant or defendants against whom he shall recover, and for the other defendant or defendants against the plaintiff'.”
There is nothing in the decision of this court in Steptoe v. Read, &c., 19 Gratt. 1, which is at all in conflict with the views I have presented. On the contrary, what is said by Judge Joynes in that case, in whose opinion the other judges concurred, strongly sustains those views. The only question in that case which can have any bearing upon this, was, as to the competency of one of two defendants who were sued as parties in an action of assumpsit, as a witness for his co-defendant on the trial of the general issue. He was clearly incompetent because the decision of the issue against the plaintiff would have been conclusive of the case in favor of both defendants. “ Under the plea of non-assumpsit,” says Judge Joynes, *288 “it was competent to the defendant to defeat the action "upon grounds going to the entire foundation of the contract.” “ Quarles would have been incompetent to prove any such, defence for Steptoe, because, if the defence was sustained, the judgment would have been for both defendants. It is no answer to say that Quarles was not offered as a witness to prove any such defence, but only to prove that Steptoe was not a party to the contract, which was a defence personal to Steptoe.” And the learned judge then proceeds to cite authorities to show that when a witness is competent at all he may be examined upon every matter upon the record, and that when he is sworn, he is not sworn to answer particular questions, but to give evidence on all the matters in dispute between the parties. And he concludes : “ If, therefore, Quarles had been put upon the stand as a witness, there was nothing to prevent his giving evidence to establish a defence going to the foundation of the entire contract, though called only for the special purpose of proving that Steptoe was no party to the contract.” That view of the case seems to concede that if it had been proved by competent evidence that Steptoe was not a party to the contract, there might have been a judgment in his favor and against the other defendant; which certainly would have been going further than it is necessary to go in this case to maintain the correctness of the judgment of the County court. In that case there would have been an apparent difficulty,though it may have been merely technical, on the ground of variance. A judgment would have been rendered against one of the defendants upon a several contract, in an action upon a joint contract. But here there is no room even for sucha technical objection. There is no variance in the case. The ease proved is precisely the case stated in the declaration. The note was in fact drawn and endorsed as therein charged. But it was proved, and the jury found that the note and all the endorsements but the last were usurious, and that the *289 last was free from usury. Judgment was therefore rendered against the last endorser, but in favor of the prior endorsers and the maker. Here the latter were discharged upon a ground of defence personal to them, and not extending to the last endorser. It did not go to the foundation of the entire contract. The action, though joint in form, is in fact founded, as we have seen, on several contracts ; and it is found that while all of these contracts were in fact made as averred, only one of them is valid and the others void. Where is the difficulty in rendering judgment against the defendant who is bound by the valid contract ? If the statute does not apply to this case, it is difficult to conceive one to which it will apply, and the statute will be of no value. There is no need of applying it to the case of a joint action or contract against several defendants, one of whom is entitled to his personal discharge on the ground of infancy, bankruptcy, &c. Cases of this kind, we have seen, constituted exceptions to the general rule requiring judgment to be rendered against all or none of the defendants in a joint action ex contractu.
I am for reversing the judgment of the Circuit court and affirming that of the County court.
The other judges concurred in the opinion of Moncvlre, P.
The judgment was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the judgment of the Circuit court is erroneous, and that there is no error in the said judgment of the said County court; therefore, it is considered that the judgment of the Circuit court be reversed and annulled, and that the plaintiff recover against the defendant his costs by him expended in the prosecution of his suit aforesaid here ; and this court, proceeding to give such judgment as the Circuit court *290 ought to have given, it is farther considered that the judgment of the County court be affirmed, and that the plaintiff recover against the defendant damages according to law and his costs by him about his defence in said Circuit court expended ; which is ordered to he certified to the said Circuit court of Augusta county.
Judgment of the Circuit court reversed.